IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ALEJANDRO A. SALAZAR,

    Petitioner,

    v.                                                No. 09-cv-619-DRH-DGW

W.A. SHERROD,

    Respondent.

MEMORANDUM AND ORDER

**WILKERSON, Magistrate Judge:**

    Pending before the Court is petitioner Alejandro A. Salazar's Petition for Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2241. For the reasons set forth below, the petition is **GRANTED**. Petitioner shall be delivered to the United States District Court for the District of Kansas for resentencing.

    I.    BACKGROUND

    On March 29, 2004, petitioner Alejandro A. Salazar pleaded guilty to one count of distribution of over 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). *United States v. Salazar*, Case No. 04-20013-JWL, 2008 WL 1792188 (D. Kan. April 18, 2008). On August 23, 2004, the trial court sentenced Salazar to a term of imprisonment of 262 months. Salazar's sentence was enhanced because the trial court found him to be a career offender under section

4B1.1 of the United States Sentencing Guidelines.[1] The Court considered a prior conviction in Missouri for involuntary manslaughter to be a violent felony that served as a predicate offense for the career offender enhancement. *Id.*

Salazar appealed his conviction and sentence arguing that his prior conviction for involuntary manslaughter was not a crime of violence that could be used to enhance his sentence.[2] The Court of Appeals for the Tenth Circuit disagreed, finding that Salazar's involuntary manslaughter conviction was a crime of violence under the Sentencing Guidelines. *United States v. Salazar*, 149 F. App'x 816 (10th Cir. 2005). The Tenth Circuit, however, remanded for resentencing on the basis of *United States v. Booker*, 543 U.S. 220 (2005).

On remand, the trial court re-imposed the 262-month term of imprisonment. On appeal, the government filed a motion to enforce the appeal waiver in Salazar's

---

[1] Under U.S.S.G. § 4B1.1, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance offense." "Crime of violence" is defined in Guideline 4B1.2(a) as "any offense under federal or state law punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  Application note 1 to § 4B1.2 states that " '[c]rime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and the burglary of a dwelling.  Other offenses are included as 'crimes of violence' if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved the use of explosives (including any explosive material or destructive device) or, but its nature, presented a serious potential risk of physical injury to another."

[2] Salazar was convicted of involuntary manslaughter, a felony, under Mo. Ann. Stat. § 565.024, "A person commits the crime of involuntary manslaughter in the first degree if he: . . . (2) While in an intoxicated condition operates a motor vehicle in this state and when so operating, acts with criminal negligence to cause the death of any person." *United States v. Salazar*, 149 Fed. App'x 816, 817-18 (10th Cir. 2005).

plea agreement.[3] Because the question whether his prior conviction was a crime of violence under the Guidelines was resolved against Salazar in the first appeal, the Tenth Circuit granted the motion and dismissed the appeal. *United States v. Salazar*, 188 F. App'x 787 (10th Cir. 2006).

In 2007, Salazar filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 in the trial court. He raised two claims of ineffective assistance of counsel, alleging that he entered into the plea agreement based on the representation of his attorney that he would not be sentenced as a career offender under the Guidelines, and that his attorney should have argued at resentencing that the career offender enhancement was precluded by *Shepard v. United States*, 544 U.S. 13 (2005). The trial court denied relief on the basis that the exception to the waiver in the plea agreement was applicable only to direct appeal, not collateral review. Even so, the trial court considered, but denied, Salazar's ineffective assistance claims on the merits. *United States v. Salazar*, Case No. 04-20013-JWL, 2008 WL 1792188 (D. Kan. April 18, 2008). Both the trial court and the Tenth Circuit denied a certificate of appealability. *United States v. Salazar*, 311 F. App'x 110 (2009).

In April 2009, Salazar filed a motion for a writ of *audita querela* in the trial court arguing that the career offender status used to enhance his sentence was

---

[3] The appeal waiver in Salazar's plea agreement contained an exception. It expressly reserved Salazar's right to appeal if he was sentenced as a career offender using the predicate offense of his "prior conviction for involuntary [vehicular] manslaughter or either of the assault convictions arising out of the same vehicle accident is a crime of violence within the meaning of U.S.S.G. § 4B1.1." *United States v. Salazar*, 188 F. App'x 787 (2006).

unlawful under *Begay v. United States*, 553 U.S. 137 (2008), which held that driving under the influence of alcohol was not a violent felony under the Armed Career Criminal Act (Doc. 1). The government filed a response in opposition to the writ, arguing that Salazar's petition was barred by the waiver in his plea agreement, that it was an improperly-filed second or successive 2255 motion, that *Begay* did not apply retroactively on collateral review, and that *Begay* was inapplicable because Salazar was convicted of manslaughter, which is an offense enumerated in application note to U.S.S.G. § 4B1.2(a), which defines "crime of violence," and therefore the "otherwise" clause construed in *Begay* did not apply to Salazar's sentence (Doc. 3). In July 2009, the government filed a motion to amend its response to withdraw its retroactivity argument, indicating that Department of Justice had issued guidance contrary to the argument. The Respondent acknowledged *Begay's* retroactivity (Doc. 6).

The trial court evaluated Salazar's petition for writ of *audita querela* on its merits. The court found that Salazar's plea waiver "clearly encompasses Mr. Salazar's right to challenge [on appeal] his sentence and his status as a career offender," but found that the waiver, into which Salazar entered knowingly and voluntarily, precluded any collateral attack (Doc. 8, p. 5). The court, however, expressed concern that enforcing the waiver on collateral attack "would seriously undermine the fairness and integrity of the judicial proceedings." The court noted that Salazar had raised the career-offender issue repeatedly, and that he was "partially correct" in that *Begay* supports the argument that involuntary

manslaughter is not a violent felony, an argument he raised in making his plea, at sentencing, and on direct appeal (Doc. 8, pp. 6-7). The court concluded that enforcing the waiver on collateral attack would "value form over substance and would result in a miscarriage of justice." Accordingly, the court determined that it would not enforce the plea waiver on collateral review as to the violent-felony predicate offense issue.

The court determined, however, that a petition for writ of *audita querela* was not the proper vehicle by which to attack his sentence. The court recognized that Salazar's *Begay*-based challenge was most like a claim under 28 U.S.C. § 2255, but found that Salazar was precluded from filing a second or successive 2255 petition because *Begay* did not state a new rule of constitutional law. *See* 28 U.S.C. § 2255(h)(2). The court found that without the ability to file a second motion under § 2255, Salazar was left with no way to challenge his sentence. The court thus concluded that § 2255 was "inadequate or ineffective" to provide Salazar a remedy. Relying on Tenth Circuit precedent, the court determined that 28 U.S.C. § 2241 was available to Salazar, and construed Salazar's petition for writ of *audita querila* as a petition for writ of habeas corpus under 28 U.S.C. § 2241. Because of the well-established rule that section 2241 petitions must be brought in the district where the prisoner is confined, the court transferred the action to this district, where Salazar is now confined.

After the case was filed in this district, the government filed a status report, informing the Court that it would not file a response to the petition for writ of

habeas corpus because the government's initial response to the petition for writ of *audita querila* in the District of Kansas was sufficient (Doc. 14).

## II. DISCUSSION

### *Petitions for Writ of Habeas Corpus under 28 U.S.C. § 2241*

Generally, applications for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing, but are limited to challenges regarding the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998). An inmate under sentence of a federal court may properly challenge his conviction and sentence by filing a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255, in the court which imposed the sentence. The statute limits an inmate to one challenge of his conviction and sentence under § 2255. An inmate may not file a "second or successive" motion unless a panel of the appropriate court of appeals certifies that such motion contains either 1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or 2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

For prisoners who are unable to meet the burden of bringing forth either newly discovered evidence or a new rule of constitutional law made retroactive by the Supreme Court, section 2255 contains a "savings clause" which may allow for

challenge of a conviction or sentence under 28 U.S.C. § 2241 if it "appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See United States v. Prevatte*, 300 F.3d 792, 798-99 (7th Cir. 2002). "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant any opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998). In other words, § 2255 is inadequate or ineffective when "a legal theory that could not have been presented under § 2255 establishes the petitioner's actual innocence." *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002). In *Davenport*, the Seventh Circuit held that a federal prisoner may seek habeas corpus under § 2241 where he has "no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." 147 F.3d at 611. The court added three qualifications to the *Davenport* rule: first, the change in law must have been made retroactive by the Supreme Court; second, the change in law must "elude the permission in section 2255 for successive motions; and third, the change in law must not be based upon differing interpretations between the circuit of conviction and the circuit of incarceration. *Id.* at 611-12.

      The case comes to the Court upon transfer from the District of Kansas. The transferring court determined that Salazar's petition, originally filed as a petition for writ of *audita querila*, should be construed as a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2241. The Kansas court also found that section 2241 was the proper vehicle for review of Salazar's *Begay* based claims. Those determinations are the law of the case. This Court will not reconsider those findings, except to comment that Salazar's challenge appears to meet the Seventh Circuit's requirements set forth in *Davenport*. The law changed after Salazar's first section 2255 motion. *Begay* called into question the use of a prior conviction of involuntary manslaughter as a predicate offense to a career offender enhancement under the Sentencing Guidelines. First, *Begay* applies retroactively to cases on collateral review. *Welch v. United States*, 604 F.3d 408, 415 (7th Cir. 2010). Second, Salazar is not entitled to file a second or successive motion under section 2255 because *Begay* did not state a new rule of constitutional law. *See* 28 U.S.C. § 2255(h)(2). Third, the change in law is not the result of a circuit split between the Tenth Circuit (the circuit of conviction) and the Seventh Circuit (the circuit of incarceration).

Moreover, in accord with the findings of the Kansas District Court, which transferred the case here, the Seventh Circuit has clarified that *Begay* challenges raised after the denial of a pre-*Begay* section 2255 motion are cognizable on habeas review under section 2241. *United States v. Wyatt*, 672 F.3d 519, 523-24 (7th Cir. 2012) ("A defendant challenging a conviction on collateral review after the Supreme Court narrowed the statute under which the defendant was convicted would be entitled to relief under section 2241.") (citing *Davenport*, 147 F.3d 605).

### *Tenth Circuit law applies to the Court's review.*

Having determined that Salazar's claims may be heard in this court pursuant to 28 U.S.C. § 2241, the Court is faced with the question, which circuit's law applies? *Davenport* instructs that a circuit split in substantive law between the circuit of conviction and circuit of incarceration may not constitute the "change in law" required by *Davenport*. 147 F.3d 605, 611-12 (7th Cir. 1998) (citing *Cain v. Markley*, 347 F.2d 408, 410 (7th Cir. 1965) (finding that section 2255 not "inadequate or ineffective" merely because the controlling law in the circuit of conviction and sentencing is unfavorable to petitioner)). *Davenport* does not, however, provide additional guidance regarding which circuit's law applies to a 2241 petition brought in the district of the petitioner's incarceration but challenging the conviction or sentencing determination of another district court in another circuit. In 2001, this district considered the choice-of-law question post-*Davenport* in *Hernandez v. Gilkey*, 242 F.Supp.2d 549, 554 (S.D. Ill. 2001) (Gilbert, J.). The defendant in that case challenged, on the basis of equal protection, the *Davenport* requirement that the "change in law" which renders section 2255 inadequate or ineffective must not be based on the difference between the law of the circuit of his conviction and the law of the circuit of incarceration. The court recognized that "no law entitles [Hernandez] to collateral review in a specific judicial circuit other than the circuit of his conviction, and this is reflected in *Davenport's* requirement that any 'change in law' not merely be the result of a

circuit split." *Id.* The court found that the *Davenport* rule did not violate the equal protection clause because "it has a very rational basis and treats similarly situated individuals the same." *Id.* The court continued:

> The rule ensures that the law that prevails in the judicial circuit of any federal prisoner's conviction, or a substantially similar law, is the law that will be applied to the prisoner's § 2241 petition seeking vacation of a conviction. Application of the law of the place of conviction is a consistent, reasonable rule, as is evidenced by the requirement that § 2255 motions be filed in the district of conviction.

*Id.* Other courts have adopted the analysis in *Hernandez* and determined that courts should apply the law of the circuit of conviction in reviewing a sentence or conviction under section 2241. *See Eames v. Jones*, 793 F.Supp.2d 747, 750 (W.D.N.C. 2011); *Chaney v. O'Brien*, Case No. 7:07-cv-121, 2007 WL 1189641 (W.D. Va. April 23, 2007), *aff'd per curiam*, 241 F.App'x 977 (4th Cir. 2007); *Cantrell v. Warden, FCC Coleman USP-1*, Case No. 5:10-cv-483-Oc-10TBS, 2012 WL 2127729 (M.D. Fla. June 12, 2012); *Carver v. Chapman*, Case No. 4:08-cv-571-Y, 2009 WL 1651512 (N.D. Tex. May 21, 2009).

This Court agrees with the rationale set forth by Judge Gilbert in *Hernandez*. That section 2255 motions must be brought in the district of conviction suggests that Congress intended collateral review of a conviction or sentence to be made under the same legal standards used by the trial court in the first instance. It is reasonable to conclude, therefore, that a court reviewing the legality of a conviction or sentence should perform its analysis based on the law under which the defendant was convicted. Based on the analysis in Hernandez, this court will

apply the substantive law of the Tenth Circuit regarding Salazar's *Begay*-based challenge.

### *The Supreme Court's interpretation of "violent felony" under the ACCA*

In *Begay v. United States*, 553 U.S. 137 (2008), the Supreme Court held that Driving Under the Influence of alcohol is not a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). That statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Begay*, 553 U.S. at 140 (citing 18 U.S.C. § 924(e)(1)). The Court considered New Mexico's DUI statute under the "otherwise involves conduct that presents a serious potential risk of physical injury to another" clause. Based on the language of the statute, and the example crimes listed therein, the Court found that violent felonies involve "purposeful, violent, and aggressive" conduct not present in statues that criminalize driving under the influence.

The high court's holding in *Begay* begat much litigation. In 2009, the Supreme Court held that the Illinois crime of failing to report to a penal institution is not a violent felony under the ACCA. The Court analyzed the statute considering the risk of physical harm posed by a failure to report. The Court determined that

failing to report to a penal institution did not involve "purposeful, violent, or aggressive conduct" as described in *Begay*. *Chambers v. United States*, 555 U.S. 122, 128-19 (2009). In *Sykes v. United States*, 131 S.Ct. 2267 (2011), the high court further opined that violent felonies under the ACCA residual clause must involve "serious potential risks of physical injury to others." *Id.* at 2275. The Court determined that "levels of risk divide crimes that qualify from those that do not." *Id.* The Court distinguished between offenses requiring knowing or intentional conduct, which are violent felonies under the ACCA, and offenses requiring recklessness, negligence, or strict liability, which fall outside of the scope of the ACCA. *Id.* at 2275-76.[4]

### *Application of Begay in the Tenth Circuit*

Before *Begay*, the Tenth Circuit held that involuntary manslaughter was manslaughter for purposes of the career-offender enhancement. The court reasoned that the inclusion of "manslaughter" in the application note to U.S.S.G. § 4B1.2(a) applied to Missouri's involuntary manslaughter statute. *United States v. Salazar*, 149 F.App'x 816, 818 (10th Cir. 2005) (citing *United States v. Moore*, 420 F.3d 1218, 1221 (10th Cir. 2005)).

In response to Salazar's petition at issue in this case, the government makes the same argument: because manslaughter is listed in the application notes to

---

[4] The cases analyzing the ACCA are applicable to Salazar's sentence enhancement under the Sentencing Guidelines. *See United States v. Womack*, 610 F.3d 427, 433 (7th Cir. 2010) (courts "interpret coterminously the ACCA and the career offender § 4B1.1 provision"); *United States v. McDonald*, 592 F.3d 808, 810 (7th Cir 2010) (citing *Woods*, 576 F.3d 403-04).

U.S.S.G. § 4B1.2 as a "crime of violence," involuntarily manslaughter in Missouri is necessarily a "crime of violence" under the Guidelines.  This is no longer the law in the Tenth Circuit.  In *United States v. Armijo*, the Tenth Circuit was presented with the question whether Colorado's involuntary manslaughter statute was a crime of violence under the career-offender Guideline, 651 F.3d 1226 (10th Cir. 2011). The court considered its prior holdings and recognized that offenses found to be crimes of violence involved "purposeful, violent, and aggressive conduct" not present in Colorado's involuntary manslaughter offense. *Id.* at 1234-35.  The court further acknowledged similar cases out of the 6th, 7th, 8th, and 9th Circuits which held offenses involving only purposeful or intentional behavior qualified as crimes of violence under 4B1.2(a). *Id.* at 1235 (citing *United States v. Craig*, 630 F.3d 717, 724-25 (8th Cir. 2011); *United States v. Ruvalcaba*, 627 F.3d 218, 224-25 (6th Cir. 2010); *United States v. Coronado*, 603 F.3d 706, 708 (9th Cir. 2010); *United States v. McDonald*, 592 F.3d 808, 811 (7th Cir. 2010)).

Recognizing that the government's argument was "not without some modicum of analytical force," the court concluded "it is simply untenable to read manslaughter as set out in application note 1 to § 4B1.2 as encompassing those versions of the crime with a *mens rea* of recklessness, when this court has unequivocally held that the text of § 4B1.2 only reaches purposeful or intentional behavior." *United States v. Armijo*, 651 F.3d 1226, 1236 (10th Cir. 2011).  The Court continued, "[J]ust as the Supreme Court limited the broad language in the ACCA to crimes involving 'purposeful, violent and aggressive conduct,' so too is it

logical to construe the reference to manslaughter [in the commentary to § 4B1.2(a)] as extending only to those crimes involving the requisite *means rea*." *Id.* (quoting *United States v. Herrick*, 545 F.3d 53, 60 n. 8 (1st Cir. 2008)).  The court thus held that "only those versions of manslaughter that involve intentional or purposeful behavior qualify as crimes of violence for purposes of § 4B1.2(a)." *Armijo*, 651 F.3d at 1237 (citing *United States v. Woods*, 576 F.3d 400, 410-411 (7th Cir. 2009)). Post-*Begay* courts in the Tenth Circuit have drawn the line between behavior that is negligent or reckless and behavior that is knowing or intentional.

   The Missouri offense of involuntary manslaughter (as quoted by the Tenth Circuit in *United States v. Salazar*, 149 F. App'x 816 (10th Cir. 2005)) requires 1) operation of a motor vehicle, 2) while in an intoxicated condition, 3) with the *mens rea* of criminal negligence, 4) to cause the death of any person.  The crime so formulated specifies a *mens rea* of negligence, which falls outside of the boundaries of the definition of a crime of violence under the career-offender Guideline.  For this reason, the Court believes Salazar is entitled to habeas relief.

   In so finding, the Court acknowledges a tension between the Tenth Circuit's holding in *Armijo* and the holdings of some other circuits.  The Third Circuit has found that if a crime is listed in the application note of 4B1.2, then the offense is an "enumerated" crime, and a court does not resort to *Begay* for analysis, which applied only to "residual clause cases." *United States v. Marrero*, 677 F.3d 155 (2012).  The Fourth Circuit has followed the Third Circuit's lead, finding that the

crimes specified in the application note constitute enumerated offenses in addition to those listed in the Guideline itself. *United States v. Mobley*, Case No. 11-4391, 2012 WL 2866678 (4th Cir. July 13, 2012).[5]

The disagreement among the circuits does not change this Court's findings, however, because the Tenth Circuit has plainly held that an offense with a *mens rea* of negligence, no matter how titled, cannot be considered a predicate "crime of violence" under U.S.S.G. § 4B1.2. *See Armijo*, 651 F.3d at 1235. This holding has not been overturned by the Supreme Court. As such, it stands as the law of the Tenth Circuit on the matter.

### III.  CONCLUSION

For the reasons set forth above, the Court finds that Salazar is entitled to habeas relief, in the form of resentencing by the trial court. The petition for writ of habeas corpus is **GRANTED**. The Respondent shall deliver Mr. Salazar to the United States District Court for the District of Kansas for resentencing.[6]

**IT IS SO ORDERED.**

Signed this 31st day of August, 2012.

Digitally signed by David R. Herndon
Date: 2012.08.31 09:54:07 -05'00'

**Chief Judge**
**United States District Judge**

---

[5] The Court also recognizes the Seventh Circuit's recent opinion in *United States v. Raupp*, 677F.3d 756 (7th Cir. 2012), which differentiates between the ACCA, a statute, and the Sentencing Guidelines, which are an agency's interpretation of its own regulations.

[6] *See McCoy v. Rios*, Case No. 10-cv-1239, 2012 WL 3267707 (C.D. Ill. August 9, 2012) (ordering respondent to deliver inmate to sentencing court for resentencing after remand by Seventh Circuit).